[No. 32502.   Department One.   August 12, 1954.]

HERBERT G. CLARK *et al., Appellants,* v. SUNSET HILLS MEMORIAL PARK, INC., *et al., Respondents.*[1]

[1]Reported in 273 P. (2d) 645.

*Lenihan & Ivers,* for appellants.

*Hall, Cole & Lawrence,* for respondents.

*Charles O. Carroll* and *Robert H. Van Eaton,* for respondents Carroll, Morris and Stacy.

FINLEY, J.—Herbert G. Clark and thirteen others, all property owners in King county, Washington, instituted this action to enjoin the operation of a cemetery located in the vicinity of their residences. The principal defendants are Sunset Hills Memorial Park, Inc., a nonprofit cemetery, and the five individuals, members of the corporation. However, the plaintiffs joined as additional defendants the auditor, the assessor, and the prosecuting attorney of King county and, in a separately stated cause of action, sought a writ of mandate to require the auditor and the assessor to remove from their files and records the plat and dedication of a cemetery filed by Sunset Hills Memorial Park, Inc. In the alternative, plaintiffs prayed for a writ of mandate requiring the prosecuting attorney to institute appropriate proceedings to cancel the filing and recording of the cemetery plat.

A demurrer, interposed by the county officials, was sustained by the Honorable Theodore S. Turner, of the King county superior court, and the above-mentioned county officials were dismissed as parties defendant. Thereafter, the lawsuit proceeded to trial on the merits against the principal defendants before the Honorable William J. Wilkins, who, after hearing evidence and argument, entered judgment dismissing plaintiffs' complaint with prejudice. The plaintiffs have appealed from the order of Judge Turner dismissing the county officials as defendants, and from the judgment entered by Judge William J. Wilkins dismissing their complaint.

Appellants' thirty-six assignments of error raise three basic questions. First, it is contended by appellants that the

county auditor improperly received a plat of the cemetery for filing, because no appropriate county authority had approved it and the dedication of the property for cemetery purposes as required by the *general platting laws* of the state. Second, appellants contend that the creation and maintenance of the cemetery by the respondents is unlawful in that no valid permit to establish a cemetery exists, as required by state and county zoning law. The third question is whether the maintenance of the cemetery is a menace to the health of the appellants, or at least creates in their minds a reasonable fear that it is a menace to their health. Appellants contend that a reasonable basis for fear exists, even if not an actual danger to their health, and that they are therefore entitled to an abatement of the cemetery as a nuisance.

After a Departmental hearing here on the motion of respondent county officials to dismiss the appeal respecting the order dismissing them as parties defendant, the questions of appellate procedure there involved were passed until a determination could be reached by us as to the entire appeal on its merits. In the discussion hereinafter, the questions decided adversely to appellants by Judge Turner in dismissing the county officials are considered and determined by us here, adversely to the appellants; and the final judgment of the trial court, dismissing the complaint in this case with prejudice, is affirmed. Consequently, we feel it is unnecessary for us to discuss the motion interposed by the county officials to dismiss the appeal as to them.

A chronological statement of events leading up to the present litigation is essential to a proper understanding and disposition of the matters involved. Prior to 1946, all of the land in the vicinity of the present cemetery, including that now owned or controlled by the several principal respondents, was zoned as agricultural land. In July, 1946, the county commissioners, acting upon the recommendation of the county planning commission, rezoned approximately sixty-six acres of the area from agricultural to third-class

residential property. The rezoned property was then owned by Overlake Memorial Cemetery, Inc. Later during the same year, the county commissioners granted a permit allowing the newly rezoned third-class residential property to be used for a cemetery. Thereafter, Overlake cleared and surveyed approximately nine acres of the rezoned land for the purpose of establishing a cemetery. On August 22, 1947, Overlake filed with the county auditor a plat and dedication of the nine acres as a cemetery. The plat bore written endorsements of approval by the county planning commission, the county commissioners, and the county road commissioners.

Overlake commenced to develop the nine-acre tract, but by February, 1949, the corporation had become insolvent. The corporate directors adopted a resolution to sell all of the land owned by the corporation. A sale was negotiated through a real-estate broker, who applied for a policy of title insurance. The title company refused to insure the title as being free from encumbrances because of the dedication of the land for cemetery purposes, as mentioned above. As a result, Overlake corporate directors passed a resolution for the institution of proceedings to vacate the plat and dedication of the property for cemetery purposes. This was done.

On March 13, 1950, Overlake conveyed all of the land owned by it to Modern Home Builders, Inc. The conveyance included the sixty-six acres zoned, R-3 Residential, with permit for a cemetery. In August, 1952, Modern Home Builders, Inc., conveyed five acres of this property to the five individual respondents herein and granted them options to purchase the remaining fifty-one acres. Following acquisition of the five-acre tract, the individual respondents incorporated the respondent, Sunset Hills Memorial Park, Inc., as a nonprofit cemetery corporation. The five-acre tract was then conveyed to the new corporation, hereinafter referred to as corporate respondent.

In September, 1952, an engineer employed by the corporate respondent, filed a tentative plat of the five acres as

a cemetery with the county planning commission for approval. The commission set a date for public hearing and caused notices thereof to be posted. Shortly thereafter, a number of written protests were received by the planning commission relative to approval of the five acres for a cemetery. On October 9th, the attorney for corporate respondent, by letter, requested advice from the board of county commissioners as to the correct procedure to be followed for filing the cemetery plat, which was attached to his letter. The county commissioners obtained a legal opinion from the prosecuting attorney on October 24th. It stated that the land within the proposed cemetery plat was properly zoned, with permit for cemetery use, noting that a permit to establish a cemetery had previously been granted. The opinion further advised that "The statutes for the filing of cemetery plats do not require their submission to either the county commissioners or the county planning commission." The opinion concluded that the plat should simply be filed with the county auditor.

On October 27, 1952, pursuant to the opinion of the prosecuting attorney, the county commissioners by formal action directed that the proposed cemetery plat be returned to corporate respondent for filing with the county auditor. On the same day, the plat was filed with the auditor. Sometime prior to October 27th, the tentative plat which had been filed with the planning commission was withdrawn. The public hearing to consider the platting of the cemetery was canceled. On November 4, 1952, appellants' attorneys wrote a letter to respondents' attorneys, stating that injunction proceedings would be instituted against respondents if any further steps were taken to establish the cemetery. On November 6, 1952, appellants filed their complaint in this action.

Generally speaking, appellants contend that certain provisions of the so-called general platting statutes (RCW 58.16) must be complied with by those seeking to establish, plat, or dedicate land for a cemetery. They urge that compliance with specific provisions of the general ceme-

tery act as to platting and dedication is insufficient. RCW 58.16.020, of the general platting statute, requires that certain city or county authorities approve each plat, subdivision, or dedication of property before the same may be filed with the county auditor. Sale of any lots or tracts of a plat, subdivision, or dedication is forbidden until the written approvals of such officials are endorsed on a plat and it is filed for record with the county auditor.

RCW 58.16.090 reads as follows:

"The county auditor shall refuse to accept for filing any plat, subdivision, or dedication until approval thereof has been given by the appropriate city, town, or county authority. Should a plat, subdivision, or dedication be filed without approval, the prosecuting attorney of the county in which the plat is filed shall apply for a writ of mandate to the superior court in the name of and on behalf of the city, town, or county authority required to approve, requiring the auditor and assessor to remove from their files or records the plat, subdivision, or dedication. The costs of the action shall be taxed against the auditor."

In support of their contention mentioned just heretofore, appellants urge that *specific provisions* of the general cemetery act, RCW 68.20.080 and 68.20.090, by reference, incorporate the regulations or controls of the general platting statutes as effective provisions of the general cemetery act and thus superimpose the former upon those seeking to establish, or to plat and dedicate a cemetery.

RCW 68.20.080 provides:

"Cities and counties may enact ordinances regulating or prohibiting the establishment of new cemeteries or the extension of existing ones, and give power to local planning commissions to pass upon and make recommendations to local legislative bodies concerning the establishment or extension of cemeteries."

We think it should be noted at this point that the only regulation by cities and counties authorized under this section pertains to the *establishment* or *extension* of cemeteries; in other words, that such section and RCW 68.20.090 connote nothing more than zoning and issuance of zoning permits.

RCW 68.20.090 provides:

"It shall be unlawful to establish or maintain a cemetery or to extend the boundaries of an existing cemetery without a permit issued in accordance with the city and county ordinance and other zoning or statutory provisions pertaining thereto."

This section provides an effective device by which cities and counties may regulate cemeteries. But again, the regulation authorized is limited to the establishment and extension of cemeteries. The method of exercising this control consists of withholding or granting a permit "issued in accordance with the city and county ordinance and other zoning or statutory provisions pertaining thereto."

We do not find within these two sections of the general cemetery act, mentioned just heretofore, any incorporation by reference of RCW 58.16. This latter chapter vests in cities and counties the authority generally to withhold approval of a plat, subdivision, or dedication of property, and thereby includes the authority to control much more than just the establishment or extension of a particular kind of land use. Control of the subdivision of burial plots, provisions for streets and roadways, and a general control over the internal development of a cemetery would be vested in cities and counties, if the cemetery plat and dedication were subject to approval of these authorities. This greater power is not granted by RCW 68.20.080 and RCW 68.20.090, which, by their terms, authorize regulation by permit only of the establishment or extension of cemeteries; that is, zoning. The nature of the permit required for the establishment of a cemetery will be discussed at some length hereinafter.

Appellants insist that, in any event, the provisions of RCW 58.16, providing for control of plats, subdivisions and dedications, must apply to the platting and dedication of cemeteries, as cemeteries are not specifically excluded therefrom. With this conclusion we cannot agree. The language used in the general platting statutes is inapplicable to the platting and dedication of cemeteries. RCW 58.16.060 provides:

"The city, town, or county authority shall inquire into the public use and interest proposed to be served by the establishment of the plat, subdivision, or dedication. It shall see that appropriate provision is made in the plat or subdivision for streets and other public ways, parks, and playgrounds, and shall consider all other facts deemed by it relevant and designed to indicate whether or not the public interest will be served by the platting, subdividing, or dedication." . . ."

The object of this section is to place with the local governmental authority the responsibility for supervising the orderly development of communities. The requirements of formal applications, hearings, and approval by local authorities as prerequisites for filing plats of residential subdivisions serve a definite purpose that does not exist in the case of cemetery plats and dedications. In the case of residential subdivisions, the city or county has a vital interest in the layout of streets, the provisions made for parks and playgrounds, and all other factors which contribute to the orderly growth of an area. *In the case of cemeteries, the public has none of these interests in the internal development of the grounds.* This fact is reflected in the provisions of the general cemetery act which authorize a private cemetery authority to adopt, amend, revise, and enforce rules and regulations for the use, care, control, management, restriction, and protection of all or any part of its cemetery. See RCW 68.20.070. Specifically, the cemetery authority may restrict and limit the use of all property within its cemetery grounds. See RCW 68.20.060.

█ Most persuasive is the fact that RCW 68.24.020 to 68.24.040, inclusive, of the general cemetery act, make complete provision for platting and dedicating a cemetery without reference to the general platting statutes contained in RCW 58.16.

RCW 68.24.020 provides:

"A cemetery authority, from time to time as its property is required for cemetery purposes, shall:

"(1) In case of land, survey and subdivide it into sections, blocks, plots, avenues, walks, or other subdivisions, and make a good and substantial map or plat showing the

subdivisions, with descriptive names or numbers; and . . . "

RCW 68.24.030 provides:

"It shall file the map or plat in the office of the recorder of the county in which all or a portion of the property is situated. It shall also file for record in such office a written declaration of dedication of the property delineated on the plat or map, dedicating the property exclusively to cemetery purposes."

RCW 68.24.040 provides:

"Upon the filing of the map or plat and the filing of the declaration for record, *the dedication is complete for all purposes,* and thereafter the property shall be held, occupied, and used exclusively for cemetery purposes." (Italics ours.)

In none of these sections is the approval of plats and dedications by city or county authorities required.

It may be observed that the appellants in the instant case have no real quarrel with the platting and dedication of the Sunset Hills Memorial Park, except as it constitutes the *establishment* of a cemetery. As noted above, cities and counties are empowered to regulate the establishment of cemeteries, but only by the means of zoning and of granting or refusing permits.

As mentioned hereinbefore, a further contention of appellants is that the establishment of the cemetery by the corporate respondent is unlawful because no permit was issued *specifically* to such respondent, as allegedly required by county resolution and by RCW 68.20.090, which is quoted above. As to this aspect of the matter, the trial court made the following finding of fact:

"That prior to the year 1946 all of said property described in paragraph II, above [all property which respondents now own or have options to buy], and all other land lying in the immediate vicinity thereof, had been duly zoned by the Board of County Commissioners of King County, Washington, acting upon recommendation of the King County Planning Commission, as agricultural property. That in the year 1946 the Board of County Commissioners of King County, Washington, acting upon recommendation of the

King County, Washington Planning Commission, and pursuant to applicable zoning resolutions and procedures pertaining thereto, rezoned parcels 1, 3 and 4 [parcels now owned by or optioned to respondents] from agricultural property to third class residence property and *granted a permit for the development and use of said property as a cemetery.*" (Italics ours.)

This finding is supported by the evidence and is unchallenged by any assignment of error. The permit referred to by the trial court was granted when Overlake Memorial Cemetery owned the land concerned. Appellants maintain that the permit to establish a cemetery was either abandoned and lost by Overlake, or was, in effect, revoked by the county commissioners; or, in any case, did not run with the land. From this, appellants contend that, since no permit to establish a cemetery has been granted to Sunset Memorial Park, the maintenance of a cemetery by that corporation is unlawful.

On the other hand, respondents contend that the term "permit," when used in connection with zoning, is merely a matter of zoning terminology, a subclassification or refinement of land-use classification, rather than a personal privilege or license. We are inclined to agree.

The language of RCW 68.20.090 indicates that the granting of a permit to establish a cemetery is a zoning function. The statute provides:

"It shall be unlawful to establish or maintain a cemetery or to extend the boundaries of an existing cemetery without a permit issued in accordance with the city and county ordinance and *other zoning* or statutory provisions pertaining thereto." (Italics ours.)

In accordance with this statute, section six of the King county districting resolution No. 11373 authorizes cemetery use of land zoned R-3, Residence, "when a permit therefor has been obtained from the Planning Commission."

The exercise of zoning powers by county planning commissions and boards of county commissioners involves more than the granting of purely *personal* licenses or privileges. The zoning powers of the planning commission and the

board of county commissioners are set out in RCW 35.63, specifically, RCW 35.63.110, which provides:

"For any or all of such purposes [as are set forth in RCW 35.63.090], the council or board, on recommendation of its commission, may divide the municipality or any portion thereof into districts of such size, shape and area, or may establish such official maps, or development plans for the whole or any portion of the municipality as may be deemed best suited to carry out the purposes of this chapter and within such districts *it may regulate and restrict the* erection, construction, reconstruction, alteration, repair or *use of* buildings, structures or *land.*" (Italics ours.)

■ These powers do not contemplate the restriction or authorization of land use on the basis of *ownership by particular persons.* The objective and purpose of land classification and use restriction powers is the co-ordinated physical development of the city or county. The King county districting resolution establishes several different use districts or zones, including an R-3, Residence, district. Cemeteries, crematoriums, and mausoleums are authorized uses within such districts or zones, but only when a permit has been obtained. Thus, before land can be effectively zoned for cemetery purposes, it must be zoned R-3, and a permit to operate a cemetery thereon must be issued. Both of these steps are zoning functions, and, when accomplished, authorize use of land for cemetery purposes. Thereafter, the owner of the land may not effectively abandon or otherwise change the land-use authorization except by petition to the appropriate authorities. Furthermore, in this connection, the vacation by Overlake of the platting and dedication of its nine-acre cemetery did not affect the land-use authorization or zoning respecting the sixty-six-acre tract which was zoned R-3, with permit to establish a cemetery thereon.

■ Appellants next contend that, irrespective of the statutory questions involved in this case, the maintenance of the respondents' cemetery constitutes a nuisance which should be abated. At the trial, appellants sought to show that the existence of the cemetery on high ground above the

sites of their several water wells created a danger of pollution and contamination. In this connection, the trial court made the following finding of fact:

"That the land of each of the plaintiffs, except the plaintiffs Love and Hardgrove, is supplied with water from wells situated upon their property. That the evidence overwhelmingly established that the maintenance and use of the property described in paragraph II, above, owned or under option to the defendants, as a cemetery or for cemetery purposes, or for the burial of dead human remains therein, will not contaminate or pollute the wells of the plaintiffs, or other persons similarly situated, nor render the water of said wells unfit for human or animal consumption, and *that the fears, if any, claimed by some of the plaintiffs in that regard are wholly unfounded.*" (Italics ours.)

This finding is strongly supported in its entirety by the expert testimony of a professor of sanitary engineering at the University of Washington, a public health engineer employed by the Washington state health department, the supervisor of sanitation for King county, and an eminently qualified pathologist. Appellants assigned error only to the italicized portion of the finding. It is urged that this part of the finding is an erroneous conclusion of law. In support thereof, counsel for appellants rely on *Everett v. Paschall,* 61 Wash. 47, 111 Pac. 879. In that case, the plaintiff property owners sought to enjoin the maintenance of a tuberculosis sanitarium located across an alleyway from their properties. The trial court found that the sanitarium constituted no danger to persons living in the immediate vicinity, although it did cause a decline of real-estate values, because of the general dread of the disease. The trial court denied the injunction. In reversing, this court said:

"If dread of the disease and fear induced by the proximity of the sanitarium, in fact, disturb the comfortable enjoyment of the property of the appellants, we question our right to say that the fear is unfounded or unreasonable, when it is shared by the whole public to such an extent that property values are diminished."

In *Rea v. Tacoma Mausoleum Ass'n,* 103 Wash. 429, 174

Pac. 961, we distinguish the *Everett* case, pointing out that there,

"Relief was granted as prayed for upon the theory that the fear of the public generally, not of the plaintiff in particular, of infection from such an institution by those living near it, was sufficient to entitle the plaintiff to relief under the facts of that case."

It may be added that in the *Everett* case, under all of the facts as found by the trial court, the fears of plaintiff property owners were not unreasonable. In the case at bar, as in *Rea v. Tacoma Mausoleum Ass'n, supra*, the appellants failed to show that the public generally fears that the existence of cemeteries will pollute and contaminate surrounding wells. Indeed, the evidence in the case established that in general property owners, drawing water from wells located adjacent to other cemeteries, do not suffer from fear of contaminated water.

The trial court made a further finding in the instant case, that, although there was no evidence that the respondents presently intended to use the property as a crematorium or mausoleum, the evidence overwhelmingly established that such use will not pollute or contaminate the surrounding air or water, or otherwise injure the appellants.

The trial court's findings in connection with the question of nuisance are supported by the evidence and will not be disturbed.

The order dismissing the county officials from the action and the judgment dismissing the appellants' complaint are in all respects hereby affirmed.

GRADY, C. J., MALLERY, HAMLEY, and OLSON, JJ., concur.