[No. 226-2.    Division Two.    April 12, 1971.]

Gunnar Bersos *et al., Appellants,* v. Cape George Colony Club, *Respondent.*

*Thomas C. McCarthy,* for appellants.

*Glenn Abraham,* for respondent.

Pearson, J.—This case presents a conflict between the strong public policies favoring free use of land and legitimate private land use control. Cape George Colony is a real estate development on the shores of Puget Sound in Jefferson County. The plat of Cape George Colony contains cer-

tain restrictive covenants. Among these are two that are crucial to this dispute:

All purchasers or owners of real property or interest therein in this plat must be acceptable to the Membership Committee of Cape George Colony, a non-profit corporation (hereinafter referred to as "the corporation"), to be formed by Cape George Land Co., Inc., or its nominees, and must become members of Cape George Colony.

Before constructing a residence or building of any kind, it shall be mandatory for the builder or purchaser and property owner to first submit a plan of such construction to the corporation for approval by its Building Committee, and no work of any nature whatsoever shall be started on the residence or building before the plan is approved in writing by the corporation. All buildings shall be completed on the exterior, including paint, within six months after the starting date.

Subject to these restrictions, the plaintiffs, Gunnar Bersos and wife, and Tayler L. McCormick, purchased a lot in Cape George Colony, denominated tract B. The record is unclear whether ownership of tract B was taken by the plaintiffs as tenants in common or whether each plaintiff took title to one-half of the total tract. The plaintiffs applied for and were granted membership in the defendant club, but again it is not clear whether this was a joint membership or two separate memberships. At any rate, the plaintiffs, who had received building permits from Jefferson County, applied to the Cape George Colony Club Building Committee for permission to build two houses on tract B. It appears from the plat that tract B is nearly twice the size of most other lots in the subdivision.

All parties agree that permission to build was denied because of a policy of the building committee purportedly based on powers implied in the covenants set out above, which forbids subdivision of platted lots. A declaratory judgment action was filed, seeking to adjudicate the rights of the parties. From a grant of summary judgment of dismissal, plaintiff appeals. It is our view that the issues raised by the pleadings and affidavits raised material issues of fact

and that it was error to grant defendant's motion for summary judgment.

■ CR 56 requires that summary judgment not be granted when material issues of fact exist in the case. *E.g. Bartlett v. Northern Pac. Ry.*, 74 Wn.2d 881, 447 P.2d 735 (1968). As Professor Trautman has observed, a material fact is one upon which the outcome of the litigation depends. The disputed issue must have some bearing on the outcome of the matter. Trautman, *Motions for Summary Judgment: Their Use and Effect in Washington*, 45 Wash. L. Rev. 1 (1970); *Capitol Hill Methodist Church v. Seattle*, 52 Wn.2d 359, 324 P.2d 1113 (1958). We think there are several disputed factual questions in this case which have considerable bearing on the outcome of this litigation.

■ First, we think it is possible to waive a restriction or to act so as to be estopped to enforce it. Restrictive covenants have often been found to be in derogation of the policy favoring free use of land. A theory that such restrictions could be waived is, of course, consistent with such a policy. *See Granger v. Boulls*, 21 Wn.2d 597, 152 P.2d 325, 155 A.L.R. 523 (1944). Whether or not such a theory could apply to the present controversy is a matter of fact. For example, it would seem relevant to clarify how title was taken by the plaintiffs here. How was membership in the defendant organization accorded to them? Were representations concerning building restrictions made to them by anyone with authority to do so?

■ Next, the intent of the parties to the covenant is the key factor in determination of the effect to be given restrictions.

When meaning is doubtful, surrounding circumstances must be considered to determine proper meaning. Doubts must be resolved in favor of free use of land, but intended necessary implications from the writing may be enforced. *Burton v. Douglas County*, 65 Wn.2d 619, 399 P.2d 68 (1965). Intent is preeminently a question of fact. Without fact finding about the context in which the words of the restriction were written, the intended legal effect thereof

cannot be ascertained. What the building committee has done in this case is not specifically provided for on the face of the restrictions we have as part of the record on appeal. Whether such a power must necessarily be implied is a factual matter that requires evidence and a factual determination. *See Eagle Ins. Co. v. Albright,* 3 Wn. App. 256, 474 P.2d 920 (1970).

Finally, even if it is factually determined that the building committee had authority to restrict the number of buildings to be built on each platted lot, the trial court must determine whether this power was reasonably exercised in this particular case. The location of the land, the character of the surrounding community, the purposes of the restrictions and the effect of the desired activity on the community are all factual matters that bear on the question of reasonableness. *See Hannula v. Hacienda Homes, Inc.,* 34 Cal. 2d 442, 211 P.2d 302 (1949).

Since trial of this matter will be necessary, we wish to state a view on one of the alternative grounds adopted by the trial court in its memorandum opinion. The trial court indicated its belief that the lot lines on the plat map in and of themselves constitute an implied restriction against subdivision of the platted lots. We find we cannot agree with this view. First, as has been often said by the Supreme Court, restrictions on the free use of land will not be implied unless they necessarily follow from clear language of written restrictions. *Burton v. Douglas County, supra; Weld v. Bjork,* 75 Wn.2d 410, 451 P.2d 675 (1969). In the latter case, a written covenant established set-back requirements for side lot lines. The defendant owned two contiguous lots and proposed to build a building in the middle of this land, traversing the interior lot line. The Supreme Court held that the restriction would apply only to the exterior lot lines of any owner's holdings. The converse of this holding—that is, that a single lot may be subdivided into two or more plots without the need for amendment to the plat—is found in the Ohio case of *Hamil-*

*ton v. Link-Hellmuth, Inc.*, 104 Ohio App. 1, 146 N.E.2d 615 (1957).[1]

RCW 58.17 contains the statutory regulations relating to plats. Our study of this statute indicates to us that one purpose of platting is regulation of land use to prevent overcrowding and to insure the adequacy of public utilities, highways, and public building sites, particularly for schools.[2] RCW 58.17.020(8) defines "lot" in terms of zoning requirements.[3] Counties are authorized to enact building codes and restrictions (RCW 36.32.120(7)) and to undertake planning and official controls on land use. RCW 36.70.560.[4]

It is stipulated here that building permits were granted to each of the plaintiffs. We think that the officers charged with granting such permits will consider the public interest before granting them. Building permit and zoning procedures effectively provide land use controls. We are disinclined to imply a private restriction to do the same thing merely on the basis that lot lines are platted as a matter of record. This is especially so when some written restrictions were filed. If the parties desired such a restriction as that proposed should attach to the lot lines on the map, then they presumably could have expressly included it, in which case the problem would be different from that we now face.

The reasonableness of any proposed building program, as

---

[1] *See also* E. Yokley, The Law of Subdivisions § 50 (1963).

[2] It seems to us that a reading of RCW 58.17.110 or RCW 58.16.060 (the statutory predecessor of 58.17.110) discloses that the primary public considerations to be protected are those of providing adequate streets, utilities, open spaces, and sites for public buildings, and primary schools. Lot lines are distinctly of secondary import if these services are adequately provided. *See generally, Clark v. Sunset Hills Memorial Park, Inc.*, 45 Wn.2d 180, 273 P.2d 645 (1954).

[3] RCW 58.17.020(8) reads:

" 'Lot' is a fractional part of subdivided lands having fixed boundaries, being of sufficient area and dimension to meet minimum zoning requirements for width and area. The term shall include tracts or parcels."

[4] In this regard, see the analogous provision for cities and towns found in RCW 35.63.080.

668

discussed above, is a factual matter. The building committee might, we think, find some proposals reasonable and others not reasonable if the building committee is found to have such power at all.

Reversed and remanded.

PETRIE, C.J., and ARMSTRONG, J., concur.