# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| KHUSHDEV MANGAT and HARBHAJAN MANGAT, and the marital Community comprised thereof, | No. 67712-8-I/Linked w/68739-5-I |
| | DIVISION ONE |
| Appellants, | |
| v. | |
| SNOHOMISH COUNTY, a political Subdivision of the State of Washington LUIGI GALLO, a single man, JOHANNES DANKERS and MARTHA DANKERS, and the marital community comprised thereof; | PUBLISHED OPINION |
| Respondents. | FILED: August 26, 2013 |

SPEARMAN, A.C.J. — Nothing in RCW 58.17.033 or chapter 30.70 SNOHOMISH COUNTY CODE grants those who have filed permit applications to develop real property a vested right to "process" the application independent of an ownership interest in the land. As such, we reject Khushdev and Harbhajan Mangat's argument that the hearing examiner and the trial court decisions, which allowed property owners Luigi Gallo and Johannes and Martha Dankers to move forward with a development application the Mangats originally filed, amounted to a taking of the Mangat's private property. Affirmed.

## FACTS

This appeal arises out of the Mangats failed attempt to purchase and develop two contiguous pieces of property, one owned by the Dankers and the other owned by

Gallo. The purchase and sale agreements contained identical terms: they allowed the Mangats to begin developing the land by seeking a plat application to subdivide the properties, but in the event the Mangats defaulted on their attempt to purchase, they were required to turn over all materials related to the plat application to the Dankers and Gallo.

The Mangats were unable to secure financing and defaulted. The Dankers and Gallo continued the plat application process started by the Mangats. The Mangats sued the Dankers, Gallo, and Snohomish County, arguing that the substitution of the Dankers and Gallo on the application amounted to an unconstitutional taking of their property and that it violated their right to substantive due process. The complaint sought declaratory relief and injunctive relief prohibiting Snohomish County from further consideration of the application.

Shortly after filing suit, the Mangats obtained an ex-parte temporary restraining order (TRO) from a court commissioner restraining the hearing examiner from further action on the plat application. The Dankers and Gallo moved to quash the TRO, and the parties entered an agreed order quashing it. The hearing examiner rescheduled the hearing for May 11, 2011. The Mangats moved for a preliminary injunction, staying proceedings on the plat application. After a hearing on May 3, 2011, the motion for a preliminary injunction was denied.

On May 11, the hearing examiner held a hearing on the plat application. On May 17, the hearing examiner entered a decision granting approval of the Dankers' and

2

Gallo's plat application. The Mangats appealed the hearing examiner's decision to the Snohomish County Council. The Dankers and Gallo moved for dismissal, and the Council granted dismissal on June 15, 2011.

On July 5, 2011, the Mangats filed a second lawsuit, a Land Use Petition Act (LUPA) appeal seeking review of decisions of the Council and the hearing examiner. The petition also sought writs of mandamus and prohibition against the County, as well as damages against the County under chapter 64.40 RCW. Id.[1]

In July 2011, the County, the Dankers, and Gallo moved for summary judgment dismissal of all claims raised in the first lawsuit. The Mangats cross-moved for summary judgment. On August 17, 2011, Judge Kurtz granted the motions for summary judgment, denied the Mangats' cross-motion, and dismissed the case. The Mangats appeal of that order is the subject of this opinion.[2]

## DISCUSSION

Standard of Review. "In reviewing a grant of summary judgment, we engage in the same inquiry as the trial court." Deveny v. Hadaller, 139 Wn. App. 605, 616, 161 P.3d 1059 (2007) (citing Wilson v. Steinbach, 98 Wn.2d 434, 437, 656 P.2d 1030

---

[1] The Mangats apparently had filed another lawsuit against Dankers and Gallo, claiming unjust enrichment. They voluntarily dismissed that suit, however, and it is not at issue here.

[2] In September 2011, the County moved for partial summary judgment, seeking dismissal of the Mangats' LUPA petition and the claims for writs of mandamus and prohibition in the second lawsuit. Dankers and Gallo joined the motion. On October 19, 2011, Judge Farris dismissed the Mangats' LUPA petition and the claims for writs of mandamus and prohibition. On April 10, 2012, Judge Bowden dismissed the Mangats' remaining claim for damages against the County under ch. 64.40 RCW (for untimely processing of a permit application). The Mangats' appeal of those two orders is linked with this appeal under No. 68739-5-I.

(1982)). "A summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (citing CR 56(c) and quoting Marincovich v. Tarabochia, 114 Wn.2d 271, 274, 787 P.2d 562 (1990)). "'We review the trial court's conclusions of law de novo, . . .'" Id. (quoting Bingham v. Lechner, 111 Wn. App. 118, 127, 45 P.3d 562 (2002)), "but we may affirm the trial court 'on any basis the record supports.'" Id. (quoting Graff v. Allstate Ins. Co., 113 Wn. App. 799, 802, 54 P.3d 1266 (2002)).

In their complaint, the Mangats sought declaratory and injunctive relief under two related theories: (1) permitting the Dankers and Gallo to continue forward with the plat application they originally started amounted to an unconstitutional taking of their property; and (2) permitting the Dankers and Gallo to continue forward with the plat application they originally started violated their right to substantive due process.

The Mangats make three main arguments on appeal: (1) RCW 58.17.033(1) and Snohomish County Code (SCC), ch. 30.70 grant those who have filed permit applications to develop real property the right to process the application; (2) any rights provided by development permits do not attach to the land until the permit is actually approved, therefore the right to process a development permit application "cannot be enjoyed" by an owner who is not an applicant; and (3) permitting the Dankers and Gallo to continue forward with the plat application the Mangats originally started, amounted to

4

an unconstitutional taking of the Mangats' property. We reject these arguments and affirm the trial court.

Applicant's alleged right to process development application. The Mangats argue RCW 58.17.033(1) grants those who have filed permit applications to develop real property the exclusive right to process the application. The statute reads as follows:

> A proposed division of land, as defined in RCW 58.17.020, shall be considered under the subdivision or short subdivision ordinance, and zoning or other land use control ordinances, in effect on the land at the time a fully completed application for preliminary plat approval of the subdivision, or short plat approval of the short subdivision, has been submitted to the appropriate county, city, or town official.

The Mangats contend the statute is ambiguous because "the party who benefits from the rights in [the statute] is not defined, . . ." See Br. of Appellants at 18. Based on this alleged ambiguity, the Mangats argue that we must resort to statutory interpretation to resolve the issue. The Mangats then argue that in applying the rules of statutory interpretation, it is apparent that the legislature's intent was to provide only to permit applicants the right to process the application, to the exclusion of other parties who may have an interest in the land.

We disagree that the statute is ambiguous and decline the Mangats' invitation to add to RCW 58.17.033(1) a provision providing that any rights associated with the application attach, upon filing, to a particular person or entity. The statute's plain language provides that an application to divide land is to be considered under the zoning ordinances in effect at the time of the application. We will not "insert words into a

statute where the language taken as a whole, is clear and unambiguous." State v. Watson, 146 Wn.2d 947, 955, 53 P.3d 1 (2002).[3]

Likewise, nothing in ch. 30.70 SCC states that those who have filed permit applications to develop real property have some kind of ownership interest in the application. Although the Mangats are correct that the chapter repeatedly uses the word "applicant," that is hardly surprising given one of the purposes of the chapter is "to establish procedures for processing project permit applications[.]" SCC 30.70.010(1). Given the Mangats cite no authority in support of their argument, we reject it.

Moreover, as the respondents correctly point out, our courts have consistently held that zoning and permit rights run with the land, not with the person applying for the permits. Indeed, in Clark v. Sunset Hills Memorial Park, 45 Wn.2d 180, 273 P.2d 645 (1954), our Supreme Court explicitly recognized that land use permit rights run with the land, and are not personal to the person who obtained the permit. In that case, Overlake

_____

[3] Even if judicial construction of the statute was necessary, we would reach the same result. When interpreting a statute "[t]he court must give effect to legislative intent determined 'within the context of the entire statute.'" Whatcom County v. City of Bellingham, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996). (quoting State v. Elgin, 118 Wn.2d 551, 555, 825 P.2d 314 (1992)). When RCW 58.17.033(1) is read in context with other portions of the chapter, it is clear the Legislature did not intend to grant those who file permit applications some kind of ownership interest in the application, independent of the land or its owners:

> Every final plat or short plat of a subdivision or short subdivision filed for record must contain a . . . statement that the subdivision or short subdivision has been made with the free consent and in accordance with the desires of the owner or owners.
>
> . . .
>
> Said certificate or instrument of dedication shall be signed and acknowledged before a notary public by all parties having any ownership interest in the lands subdivided and recorded as part of the final plat.

RCW 58.17.165 (emphasis added).

6

Memorial Cemetery obtained a permit allowing its property to be used for a cemetery. Clark, 45 Wn.2d at 183. Overlake began preparing the land to be used as a cemetery, and filed a plat and dedication of the property as a cemetery. Id. Overlake became insolvent, however, and attempted to sell the property. After a title company refused to insure the title as free from encumbrances (because of the dedication of the land as a cemetery), Overlake started proceedings to vacate the plat and dedication. Id. After vacating the plat, Overlake sold and conveyed the property to Modern Home Builders. "The conveyance included the sixty-six acres zoned, R-3 Residential, with permit for a cemetery." Id. Modern Home Builders, in turn, conveyed five acres of the property to individuals who began operating a cemetery, Sunset Hills Memorial Park, on the five acres. Id.

Several people who owned property in the vicinity sued to enjoin operation of the cemetery. Among other things, they argued that establishment of the cemetery was unlawful because no permit was issued specifically to Sunset Hills. The supreme court rejected this argument holding that "the term 'permit,' when used in connection with zoning, is merely a matter of zoning terminology, a sub-classification or refinement of land-use classification, rather than a personal privilege or license." Id. at 189. The court went on to hold:

> The exercise of zoning powers by county planning commissions and boards of county commissioners involves more than the granting of purely *personal* licenses or privileges . . .
>
> . . .

7

> These powers do not contemplate the restriction or authorization of land use on the basis of *ownership by particular persons.*

Id. at 189-90). We reject the Mangats' arguments on this issue.

The Mangats next contend that any rights provided by a development permit do not attach to the land until the permit is actually approved.[4] From this premise, the Mangats argue there is a right of "processing of the application" that "cannot be enjoyed" by an owner who is not an applicant. We disagree. The Mangats argue that the subdivision process is not an *in rem* proceeding until there is a preliminary plat approval. But as the Dankers and Gallo point out, this would mean that "the vested rights of a subdivision application float as personal rights of the applicant to be assigned and governed by the applicant's whim until the moment of preliminary approval of the subdivision, when they then attach to the real property." Response Brief of Dankers at 25. The Mangats have cited no authority for this novel legal theory and we decline to adopt it.

The Mangats also argue that Washington's vested rights doctrine protects only right of the developer-applicant before a permit is granted. But their reliance on Hull v. Hunt, 53 Wn.2d 125, 331 P.2d 856 (1958) in support of that proposition is misplaced. The central holding in Hull was that, unlike what was then the majority rule regarding vested rights, Washington courts measure when rights are vested by the date of the permit application. Hull, 53 Wn.2d at 130. Although the court rejected the City of

---

[4] The Mangats do not cite to any authority which explicitly supports this premise. Instead, they provide a litany of citations to, among other things, authority defining the meaning of *in rem* jurisdiction; case law where the court held a conditional use permit ran with the land; case law where the court held a construction permit ran with the land; case law defining when a covenant runs with the land; and multiple cases holding that personal contracts do not run with the land.

8

Seattle's attempt to argue only an owner or agent of the owner could apply for a development permit, the court did not hold that an applicant has some kind of ownership interest in the application. Indeed, the court stated that for such applicants "there will generally be a good faith expectation of acquiring title or possession for the purposes of building[.]" Id. In sum, we reject the Mangats arguments on this issue.

Alleged unconstitutional taking. The Mangats next argue that the County's decision to permit the Dankers and Gallo to continue forward with the plat application amounted to an unconstitutional taking of the Mangats' property. Under our state constitution, "No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner. . . ." WASH. CONST., ART. I, § 16. The threshold question that must be answered here is whether the Mangats had any property interest in the plat application. We hold they did not.

Here, whatever interest the Mangats had in the Dankers' and Gallo's properties was extinguished when they defaulted on the purchase and sale agreements. It is undisputed that after an extension of the closing date required by the purchase and sale agreements, the Mangats were to complete the purchase by December 16, 2009. It is also undisputed that the purchase and sale agreements "expired" without the Mangats purchasing the property after their lender declined to advance them a development loan. It is further undisputed that after the Mangats failed to complete the purchase, the terms of the agreement required them give the Dankers and Gallo all documents related

9

to the subdivision of the property, and permitted Dankers and Gallo to proceed with obtaining approval of the plat application.

In other words, as of December 16, 2009, the Mangats had no interest, prospective or otherwise, in the Dankers' or Gallo's properties. As the trial court explained when it denied the Mangats' motion for a preliminary injunction, there was nothing left for the Mangats to own that could be subject to a taking:

> 6. The filing of the subdivision application by plaintiffs with Snohomish County was merely a request to develop the subject property. While the filing of an application vests certain developmental rights as they relate to the subject property, there can be no ownership interest in the application itself independent of the real property to which it pertains. Any vested rights created by the filing of such an application belong to the landowner who has the legal right to develop the property.
>
> . . .
>
> 8. When they defaulted under the contract, the plaintiffs lost the right to purchase the property and were required to turn over to the Dankers and Gallo the maps, drawings, reports and other work product related to the subdivision of the land. There is nothing left for them to own.

Clerk's Papers (CP) at 560-63 (ruling denying motion for preliminary injunction). In short, the trial court did not err in granting summary judgment on this issue.

County's authority regarding the plat application. The Mangats make two additional arguments: (1) the County had no authority to "revive" their application because it had expired; and (2) the County had no authority to "backdate" the plat application. These arguments, however, were never made to the trial court and are instead being raised for the first time on appeal. As such, we decline to consider them.

10

RAP 2.5(a) (appellate court may "refuse to review any claim of error which was not raised in the trial court").

Affirmed.

WE CONCUR:

_Spearmc_, ACJ

_Jau, J_

_Dwyer_