JONATHAN P. SHERMER ET AL v. BILLY R. HAYNES ET AL

5-5190                 451 S. W. 2d 445

Opinion delivered March 16, 1970

[Rehearing denied April 13, 1970.]

*Edgar E. Bethell,* for appellants.

*Sam Sexton, Jr.,* for appellees.

CARLETON HARRIS, Chief Justice. The issue in this case is the construction of a restrictive covenant contained in a subdivision plat[1] limiting use to "residential purposes only." Appellees, owners of various lots in Rockwood Terrace Addition, located within the city of Fort Smith, instituted suit against Jonathan P. Shermer, appellant herein, and owner of three lots in said addition, seeking an injunction prohibiting Shermer from making any use of the property he owned in Rockwood Terrace, other than a use for single family residential purposes. Appellant answered, setting out that he proposed to build an apartment building for

---

[1] A plat of Rockwood Terrace was introduced into evidence, the reverse side containing the Bill of Assurance.

residential use, and he asked that the court interpret the language of the restrictive covenants, and enter a declaratory judgment determining that he was entitled to build an apartment structure upon the property. In response to the prayer for declaratory judgment, appellees stated that such issue was moot for the reason that the court had already entered a declaratory judgment on the identical issue which Shermer sought to have relitigated; that the issue was *res judicata.*

On trial, the court stated that it was considering the record in Case No. 5551, styled *J. P. Shermer, et al* v. *Billy Haynes, et al,* the plat and Bill of Assurance of Rockwood Terrace subdivision, the zoning ordinances of the city of Fort Smith, the proposed plans for a 36-unit apartment project which Shermer proposed to construct on the three lots that he owned, and the testimony of the parties. The court held that the principal issue, *i. e.,* the use to which Lots 10, 11 and 12 might be put by Shermer, had been decided in Case No. 5551 adversely to Shermer, and the issue was thus *res judicata.* The court further held that the plat and Bill of Assurance of Rockwood Terrace, when considered in the entirety, made manifest an intent to restrict the use of the lots in the said subdivision to a single residence per lot. The court further found that appellees would suffer irreparable harm and injury if Shermer were permitted to construct the 36-unit apartment project in Rockwood Terrace. Shermer was enjoined and restrained from constructing or attempting to construct the apartment, and his prayer for a declaratory judgment was dismissed. From the decree entered in accordance with these findings, appellant brings this appeal. For reversal, it is first urged that the court erred in holding that the restrictive covenants limited development to single family residences as distinguished from other residential uses. It is then asserted that the court erred in holding that appellant was barred by the plea of *res judicata.*

We first discuss the second contention, and in doing so, it will be necessary to review the earlier suit.

In June of 1968, Shermer and wife filed a complaint (Case No. 5551) setting out their ownership of the previously mentioned lots in Rockwood Terrace, and reciting that the board of commissioners of the city of Fort Smith had passed an ordinance which zoned the property as C-4, a ·classification that would permit the use of the property for commercial purposes. The complaint then asserted:

"* * * Despite the property being zoned C-4, the above plat was filed of record ·on November 27, 1962, establishing a restriction to ·the effect that said property shall be used exclusively for· residential purposes. Said restriction is therefore .null and void."

Shermer prayed that the court issue its decree construing the restriction on˜ appellees' property, declaring said restriction invalid and unenforceable. In the alternative, it was prayed for judgment declaring that "the erection of a C-4 (commercial) building" was not prohibited by any restriction as to the use of said premise.[2] The lot owners in Rockwood Terrace answered, pleading that the restrictive convenants provided "all lots shall be used for residential purposes only," and asking that the complaint be dismissed. The court found that the property had been zoned commercial, or C-4, before the plat for Rockwood Terrace, with its restrictive covenants, had been filed; however, the court stated:

"* * * In this instance, certainly residential is a higher standard than commercial and it must be assumed, from the action .taken within its discretion, that the Board recognized the same in this instance by approving the plat with the restrictive covenants. * * *

"* * * The City Government was certainly empowered so to do and has acted within its discretion in this regard. Citizens, in reliance upon this action, have entered into contracts and undertakings between

---

[2]Under C-4, many uses were permitted, including multi-family apartments; however, Shermer was only seeking, in the litigation, the right to construct a commercial building.

themselves and others, including lending institutions not parties to this action; so that now to say that it was a slip, or a mistake, and that the original C-4 commercial zoning applies, or takes precedence over the plat with restrictive covenants, under all of the circumstances of this case would be not only inequitable, but unjust and an abridgement of contracts, as well as undue hardship to those concerned, directly and indirectly, in this particular case."

The court held that the restrictive covenants "are hereby declared to be valid and enforceable and declared valid and enforceable as to all of the 33 lots in said Rockwood Terrace Addition to the City of Fort Smith, Arkansas, and plaintiffs are directed to pay the cost of this action."

We do not agree that the decree in Case No. 5551 barred appellant from seeking a construction of the term, "residential purposes only" in the instant litigation. What is the test in determining a plea of *res judicata?* In *Hastings v. Rose Courts, Inc.,* 237 Ark. 426, 373 S. W. 2d 583, this court, quoting from an earlier case,[3] said:

" 'The test in determining the plea of *res judicata* is not alone whether the matters presented in the subsequent suit were litigated in a former suit between the same parties, but whether such matters were necessarily within the issue and might have been litigated in the former suit.' The test is not whether the matters in the second suit were *actually* litigated in the former suit between the parties, but whether such matters were *necessarily within the issues and might have been litigated in the former suit."*

We also quoted language from the United States Supreme Court decision in *Russell v. Place,* 94 U. S. 606, as follows:

"It is undoubtedly settled law that a judgment of a

[3]*Timmons v. Brannan,* 225 Ark. 220, 280 S. W. 2d 393.

court of competent jurisdiction upon a question directly involved in one suit is conclusive as to that question in another suit between the same parties. But to give this operation to the judgment it must appear either upon the face of the record, or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record—as, for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered,— the whole subject-matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined. * * *"

We agree with appellant that the issue in No. 5551 was whether the zoning ordinance or the restrictive covenants controlled permissible uses—not what residential use could be made of the property. It was not necessary to define "residential purposes only"—nor to determine whether the phrase meant single family residences or multiple residences. In fact, appellant was seeking to place a *commercial* building on the premises. The court simply held that the restrictive covenants were binding, rather than the zoning ordinance, and this was the only matter adjudicated.

Relative to the first contention, let it be remembered that courts do not favor restrictions upon the utilization of land, and if a particular mode of utilization is excluded, the exclusion must clearly appear. *Moore* v. *Adams,* 200 Ark. 810, 141 S. W. 2d 46. In 14 A. L. R. 2d, there is an annotation upon the subject, "Multiple Residence as Violation of Restrictive Covenant." At Page 1381, we find:

"Restrictions which, without more, merely limit the use of the property to 'residence' or 'dwelling' purposes have generally been held not to have the effect

of forbidding the erection or maintenance of multiple dwellings, the courts taking the view that such terms were directed only at the type of use to be made of the property, and not at the number of families which might make such use. However, the Michigan courts have consistently given a narrower meaning to the word 'dwelling,' holding that it connoted a single-family residence."

At Page 1403, we find:

"Another common group of restrictions frequently relied upon to exclude multiple dwellings are those built about the terms 'residence' or 'residential purposes.' It is the weight of authority that such a restriction, in and of itself, does not prohibit use of the land for the various types of multiple dwellings, the courts frequently remarking that the effect of the term is only to limit the use of the property to living as distinguished from business or commercial uses."

Again, at Page 1404:

"The courts have consistently held that a restriction of property to 'residence' or 'residential' purposes does not, in the absence of some further qualification, ban the erection or maintenance of apartment houses upon the property, so long as the structures are not to be used for other than residential purposes.

It is evident that the exclusion language presently before us is rather general, the type which the courts have almost uniformly held does not restrict to single family residences. This too is commented on in the annotation at Page 1409, as follows:

"Although the courts are in substantial agreement that a restriction to 'residence' purposes, standing alone, does not prohibit multiple dwellings, this unanimity disappears when the modifying terms 'a,' 'one,' or 'a sin-

gle' is prefixed to the word 'residence.'[4]

The intent to restrict the use of Rockwood Terrace to single family residences could have been clearly and unambiguously shown.

Appellees point out that one of the restrictive covenants in the present case requires that "all residences are to have a minimum of 1,200 square feet of living area, exclusive of carports, garages or porches." This is the strongest circumstance, if it may be so classed, to support the argument of the appellees, since the plans for the apartment house only call for 520 square feet in a particular unit. Still, there will be considerably more than 1,200 square feet of living area in the apartment building, and there is nothing in the clause which calls for 1,200 square feet "in each unit," or "each single residence." We, of course, are not permitted to supply the missing words.

From what has been said, it is apparent that the trial court erred in its findings. The decree is reversed, and the cause remanded for the entry of a decree consistent with this opinion.

It is so ordered.

---

[4]Even then, as pointed out in the annotation at Page 1381:

"There is a wide split of authority as to whether the restriction to 'one,' 'a' or 'a single' residence, dwelling, house, or building, will effectively exclude multiples, and considerable authority may be found for either view."

It is then pointed out that, when the adjective, "private," to the general terms, "dwelling" and "residence," is added, it appears that the majority of the courts are agreed that an intent to restrict the use to single-family dwellings is sufficiently shown; also, "one-family" residences or dwellings have generally been held to exclude multiples.