O.W. RAY and Neil Ray *v.* James and Paula MILLER and Scott E. Poynter

95-1051                                    916 S.W.2d 117

Supreme Court of Arkansas
Opinion delivered March 4, 1996

*Ogles Law Firm, P.A.*, by: *John Ogles*, for appellants.

*Robert E. Bamburg*, for appellees James and Paula Miller.

*Poynter & Gearhart, P.A.*, by: *Terry M. Poynter*, for appellee Scott E. Poynter.

DAVID NEWBERN, Justice. This appeal is about whether land purchased by the appellees, James and Paula Miller and Scott E. Poynter, from the appellants, O.W. Ray and Neil Ray (the Rays), is burdened by a restriction preventing installation of "zero clearance fireplaces" in homes constructed by the Millers and Mr. Poynter. The Chancellor dismissed the Rays' claim after hearing their case in chief. We affirm the decision.

The Rays developed a subdivision in phases. The Millers and Mr. Poynter purchased residential lots in phase II of the development. The convenances to them each included a bill of assurance which stated "all chimneys and foundations below siding shall be constructed with brick or stone." It contained no reference to fireplaces.

The Millers and Mr. Poynter constructed homes with brick chimneys but used other than masonry materials inside the chimneys. Such construction was apparently made possible by the use of a metal insert fireplace box and a metal pipe or flue

extended through the chimney. In his testimony Bill Ray referred to the construction used as "zero clearance fireplace." He said he had informed the Millers and Mr. Poynter during construction of their homes that fireplace construction had to be all-masonry. Barry Gable, a contractor, testified he understood the fireplaces in the subdivison were to be all-masonry but he admitted his understanding was based upon provisions in covenants contained in instruments conveying lots in other phases of the subdivision. Harry Polovina, a resident of the subdivision, testified he understood the phase II bill of assurance meant all-masonry fireplaces even though there was no reference to fireplaces. A Mr. Hipple gave similar testimony.

### 1. Bill of assurance

In responding to the motion to dismiss, the Chancellor concluded there was nothing in the bill of assurance applicable to the Millers' and Mr. Poynter's lots which mentioned fireplaces or flues. Nor was there evidence that the chimneys were constructed of anything other than bricks and concrete blocks.

Courts do not favor restrictions upon the use of land, and if there is a restriction, it must be clearly apparent. *Harbour* v. *Northwest Land Co.*, 284 Ark. 286, 681 S.W.2d 384 (1984). *See also Shermer* v. *Haynes*, 248 Ark. 255, 451 S.W.2d 445 (1970). When the language of the restrictive covenant is clear and unambiguous, the parties will be confined to the meaning of the language employed, and it is improper to inquire into the surrounding circumstances or the objects and purposes of the restriction for aid in its construction. *Casebeer* v. *Beacon Realty, Inc.*, 248 Ark. 22, 449 S.W.2d 701 (1970).

When there is uncertainty in the language by which a grantor in a deed attempts to restrict the use of realty, freedom from restraint will be decreed. If there is any doubt, the covenants are to be construed strictly against those seeking to enforce them and liberally in favor of freedom in use of the land. *Baldischwiler* v. *Atkins*, 315 Ark. 32, 864 S.W.2d 853 (1993).

The Chancellor was undoubtedly correct in holding there was no written restriction preventing the construction in question.

## 2. General plan of development

The Rays contended their evidence was sufficient to show a general plan of development in the subdivision sufficient to bind the Millers and Mr. Poynter and prohibit the use of the zero clearance fireplaces.

Again in response to the motion to dismiss, the Chancellor found there was no substantial evidence of a general plan of development affecting the subdivision. Even if we could say there was substantial evidence of a general plan of development suggesting the homes built in the subdivision were not to have zero clearance fireplaces, the result reached was correct.

In *Knowles v. Anderson,* 307 Ark. 393, 821 S.W.2d 466 (1991), we pointed out that restrictive covenants must be in writing. *See* Ark. Code Ann. § 18-12-103 (1987). As to the effect of a general plan, we said:

> As the *Harbour* [v. *Northwest Land Co.,* 284 Ark. 286, 681 S.W.2d 384 (1984)] opinion makes clear, it is proper to consider whether a general plan of development exists when determining whether a written covenant or restriction contained in the chain of title of the party seeking to avoid the restriction remains valid. We have no case in which a restriction has been created as the result of a general development scheme.

The Chancellor did not err in dismissing the Rays' claim that a general plan of development had established the asserted restriction on the Millers' and Mr. Poynter's lots.

Affirmed.

DUDLEY, J., not participating.