FORREST CONSTRUCTION, INC. *v.*
John MILAM, *et al.*

CA 99-1335 20 S.W.3d 440

Court of Appeals of Arkansas
Division I
Opinion delivered June 28, 2000
[Petition for rehearing denied August 23, 2000.]

*Philip J. Taylor*, for appellant.

*Robertson, Beasley, Cowan & Ketcham, PLLC*, by: *Kenneth W. Cowan*, for appellees.

JOHN F. STROUD, JR., Judge. This appeal comes from a chancery decree enjoining appellant from subdividing certain lots and from selling certain lots that had already been subdivided in the Meadowbrook South Addition in the city of Greenwood. The chancellor also refused to enforce a sewer easement over land owned by appellees Donnie and Carol Whitson, and awarded appellees $23,579.65 in attorney fees. Appellant contends that the chancellor's rulings were erroneous and raises eight arguments on appeal. Appellees ask that we dismiss the appeal on the grounds of mootness and lack of standing. We deny the motion to dismiss and reverse and remand the case.

In 1993, Forrest Griffith and his wife Gloria acquired title to over 100 acres of land in Sebastian County. The land was later

annexed to the City of Greenwood. In 1994, Griffith began developing the majority of the land into a subdivision called Meadowbrook South. He planned to divide the property into thirty-nine lots. However, before he could plat the subdivision, he sold two tracts by metes and bounds description. One tract was sold to appellees John and Claudia Milam; the other was sold to Melissa and Nelson Brock. Thereafter, Griffith platted the subdivision into lots. On May 4, 1994, he filed a plat with the circuit clerk reflecting thirty-seven lots[1] ranging in size from 1.05 acres to 5.52 acres. The plat was signed by the Griffiths, Milams, and Brocks as allotters. Forrest Griffith was listed as owner and developer of Meadowbrook South.

On May 9, 1994, five days after the plat was filed, Forrest Griffith filed a document containing ten restrictive covenants pertaining to the subdivision. The covenants provided, *inter alia*, that all lots were to be used for residential purposes only, that all residences were to have a minimum of 1,600 square feet of living area, and that all lots were to be used for single family dwellings. The document was signed only by Forrest Griffith.

After filing the plat and covenants, Griffith began to market the subdivision as one having estate-sized lots and offering "country living in the city." A few lots were sold in the summer of 1994 by Forrest and Gloria Griffith to various buyers, including appellees John and Claudia Milam and appellees Bill and Donna Dennis. In August 1994, the remaining property in the subdivision was transferred from the Griffiths to appellant Forrest Construction, Inc. After that time, the remaining appellees Maverick and Wendy Trozzi, Rush and Marcia West, Dean and Lena King, Rod and Sherry Hower, Ed and Andria Hawkins, Chris and Debra Honaker, Kenneth and Ann Hamilton, Donnie and Carol Whitson, and Charles and Kathryn O'Brien, purchased various lots in the subdivision.

In June 1996, Forrest Griffith, as president of Forrest Construction, Inc., decided to replat the subdivision by splitting nine of the unsold lots into twenty-two smaller lots. Lot 19 was split into eight lots approximately one-half acre in size, Lots 21 and 22 into three lots approximately three-quarters of an acre in size, Lots 31 and 32 into three lots approximately one and one-half acres in size,

---

[1] The lots were numbered one through thirty-nine, but the plat contained no lot twenty or twenty-nine.

and Lots 34, 35, 36, and 37 into eight lots ranging in size from .63 acres to 1.2 acres. The Greenwood City Council approved the replatting in September 1996. Thereafter, appellant began making improvements on the lots.

Griffith did not inform the appellee homeowners of his plan to split lots. However, they discovered his intention to do so. On February 18, 1997, a number of homeowners, including many of the appellees in this case, filed suit in Sebastian County Chancery Court to enjoin the splitting of lots. Within a few days thereafter, the Greenwood City Council withdrew its approval of the replatting. As a result, the homeowners voluntarily dismissed their chancery action without prejudice. Griffith, meanwhile, pursued judicial review of the city council's withdrawal of its approval. He ultimately obtained relief on May 8, 1998, when the Sebastian County Circuit Court found that the Council's withdrawal of approval had been wrongful.

Following the circuit court's ruling, Griffith began to sell the replatted lots. On August 19, 1998, appellees filed the suit that is the subject of this appeal. They alleged that appellant had split the lots in violation of the restrictive covenants filed in 1994, and they asked that appellant be enjoined from further violations. Appellant defended primarily on the grounds that none of the restrictive covenants expressly prohibited splitting the lots and that appellees' request for relief should be barred by the equitable doctrines of laches, waiver, estoppel, and unclean hands. The case went to trial, and the chancellor found that the restrictive covenant which stated that, "all lots are to be used for single family dwellings" prohibited appellant from splitting the originally platted lots. He also found that there was no basis for the application of appellant's equitable defenses. Appellant was permanently restrained from any further splitting of the originally platted lots and from allowing any of the lots already split to be sold unless the lots already had substantial construction on them.

We first address an issue originally presented by appellees in a motion to dismiss the appeal. We denied the motion without prejudice to raise it in appellees' brief, and they have done so. The motion concerns events that occurred after the notice of appeal was filed in this case. On September 14, 1999, a decree of foreclosure was entered as the result of a complaint filed by Farmers Bank of Greenwood against appellant. The decree ordered the sale of certain secured property owned by appellant in order to repay over

$1,000,000 owed to the bank. Among the properties that had been pledged as security were Lot 23 in the Meadowbrook South subdivision and seventeen of the twenty-two split lots in the subdivision. On or about October 26, 1999, those lots were in fact sold to Farmers Bank. Appellees argue that, because of the foreclosure sale, the issues in this case are now moot, and appellant has no standing to prosecute this appeal.

■ ■ A case becomes moot when any judgment rendered would have no practical legal effect upon a then-existing legal controversy. *Dillon v. Twin City Bank*, 325 Ark. 309, 924 S.W.2d 802 (1996); *Pentz v. Romine*, 62 Ark. App. 12, 966 S.W.2d 934 (1998). As a general rule, an appellate court will not address moot issues. *See Dillon v. Twin City Bank, supra.* However, we may elect to address moot issues when they raise considerations of public interest or when addressing them will prevent future litigation. *See Stair v. Phillips*, 315 Ark. 429, 867 S.W.2d 453 (1993).

■ ■ We hold that the issues presented by this case are not moot. The case involves the use of property in a large subdivision, and the rights of a substantial number of persons will be affected. A ruling on the merits will have the practical legal effect of determining what actions may or may not be taken with respect to the subdivision lots. Additionally, appellant has filed a lawsuit in federal court against the City of Greenwood and the Whitson appellees and, according to him, that case has been stayed pending our resolution of this appeal. Thus, we perceive a public interest in the outcome of this case. Finally, a decision on the merits will have the effect of determining whether appellant is liable for over $23,000 in attorney fees, imposed as the result of the chancellor's ruling on the merits. On this point, appellees argue that the question of liability for costs does not prevent dismissal of an appeal for mootness. *See Cain v. Carl-Lee*, 171 Ark. 155, 283 S.W. 365 (1926). However, the term "costs" does not ordinarily include attorney fees. *See generally, State v. McLeod*, 318 Ark. 781, 888 S.W.2d 639 (1994); *Lewallen v. Bethune*, 267 Ark. 976, 593 S.W.2d 64 (Ark. App. 1980), *overruled on other grounds, Elliott v. Boone County Indep. Living, Inc.*, 56 Ark. App. 113, 939 S.W.2d 844 (1997).

■ Appellees also rely on *Pentz v. Romine, supra*, for their contention that this case is moot. There, we dismissed a case for mootness when the property involved in the lawsuit was sold at a foreclosure sale. Appellants had filed a complaint for specific performance of a real estate contract. However, by the time the case

was heard on appeal, the property had been foreclosed upon. We held that the foreclosure rendered specific performance impossible and thus dismissed the case as moot. Unlike *Pentz*, the foreclosure in this case does not have the effect of rendering a judicial decision legally impractical. We will not be ordering appellant to take any action with regard to property he does not own.

 The next question is whether appellant has standing to prosecute this appeal. It has been said that a party has no standing to raise an issue regarding property in which he has no interest. *Nash v. Estate of Swaffar*, 336 Ark. 235, 983 S.W.2d 942 (1999). However, it has also been said that a party is an aggrieved party and thus has standing to appeal if the trial court's order has impaired his economic interests. *Sebastian Lake Pub. Util. Co. v. Sebastian Lake Realty*, 325 Ark. 85, 923 S.W.2d 860 (1996). Even though appellant has no present property interest in the lots that were replatted, he remains aggrieved by virtue of his liability for attorney fees in the amount of $23,579.65. The chancellor awarded those fees because he found that appellees were the prevailing party below. A reversal of that finding will necessarily entail a reversal of the attorney fee award against appellant. Thus, appellant has standing to prosecute this appeal.

Having disposed of the threshold issues, we turn now to the merits of the case. Appellant raises several points of error regarding the chancellor's finding that the subdivision covenants prohibit the splitting of the originally platted lots. Because we agree that the chancellor erred in his interpretation of the covenants, we need only address that point.

██ We begin by noting that chancery cases are reviewed *de novo* on appeal. *Holaday v. Fraker*, 323 Ark. 522, 920 S.W.2d 4 (1996). We do not reverse a chancellor's findings of fact unless they are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Adkinson v. Kilgore*, 62 Ark. App. 247, 970 S.W.2d 327 (1998).

██ The chancellor in this case found that the subdivision's general plan of development, the plat showing oversized lots, the marketing of the subdivision by appellant, and the covenant which read, "all lots are to be used for single family dwellings," prohibited the splitting of the subdivision's lots. Courts do not favor restric-

tions upon the use of land, and if there is a restriction on the land, it must be clearly apparent. *Holaday v. Fraker, supra.* Restrictive covenants are to be strictly construed against limitations on the free use of property. *Casebeer v. Beacon,* 248 Ark. 22, 449 S.W.2d 701 (1970). All doubts are resolved in favor of the unfettered use of land. *See id.* However, this rule of strict construction is limited by the basic doctrine of taking the plain meaning of the language employed. *Holaday v. Fraker, supra.* The general rule governing interpretation, application, and enforcement of restrictive covenants is that the intention of the parties as shown by the covenant governs. *Id.*

The covenant at issue in this case, which is covenant number nine, provides simply that all lots are to be used for single family dwellings. As written, the covenant is directed more toward the type of use to which a lot is put rather than to the size of a lot. If there had been any intention to restrict the division of lots, such intention could have been clearly and unambiguously expressed in a covenant. *See Shermer v. Haynes,* 248 Ark. 255, 451 S.W.2d 445 (1970). In fact, there was evidence at trial that, prior to the filing of the ten covenants that now govern the subdivision, a set of twelve covenants was drafted, one of which contained an express restriction on the splitting of lots. However, those covenants were not filed. The ten covenants filed, including covenant number nine, contain nothing to make it clearly apparent that the splitting of lots is prohibited.

In addition to basing his decision on the language contained in covenant number nine, the chancellor considered three additional factors: the size of the lots as originally platted, the fact that Griffith advertised the subdivision as having "estate-sized" lots, and the existence of a general plan of development. We disagree with the chancellor that these factors impose a restriction against lot-splitting. First, it is generally recognized that no restriction on subdividing lots is implied by the mere filing of a map depicting the lots. *See* Milton Friedman, *Contracts and Conveyances of Real Property,* § 4.13(b) (4th ed. 1984). *See also* 20 AM. JUR. 2d *Covenants,* § 158 (2d ed. 1995); *Hickson v. Noroton Manor, Inc.,* 118 Conn. 180, 171 A. 31 (1934); *Bersos v. Cape George Colony Club,* 4 Wash. App. 663, 484 P.2d 485 (1971). Secondly, the fact that the lots in the subdivision were marketed as being estate-sized does not imply a restrictive covenant against splitting lots. Appellees cite us to no case, and our research has discovered none, in which the representations in an advertisement were used to create a restrictive

covenant. In any event, the split lots were still sizeable, ranging from .5 to 1.2 acres. Thirdly, the fact that a general plan of development existed in the subdivision is not evidence of a restrictive covenant against lot-splitting. The importance of a general plan of development is that, in its absence, a restrictive covenant cannot be enforced. *See Constant v. Hodges*, 292 Ark. 439, 730 S.W.2d 892 (1987). A general plan of development cannot *create* a restriction. *See Ray v. Miller*, 323 Ark. 578, 916 S.W.2d 117 (1996).

 It is also important that we discuss the chancellor's reliance on the case of *Constant v. Hodges, supra.* That case has many similarities to the case at bar. In *Constant*, a property owner in the Robinwood subdivision in Little Rock wanted to divide his lot. The subdivision's restrictive covenants contained no express restriction against lot-splitting. Nevertheless, our supreme court held that lot-splitting was prohibited based upon the existence of a general plan of development and the language of three relevant instruments. Two of those instruments recited that "only one single family residence...shall be erected." It is this language that distinguishes *Constant* from the case before us. It avails itself of the interpretation that property use is restricted to "only one" house per lot. By contrast, the restriction in this case that "all lots are to be used for single family dwellings" is not susceptible to such an interpretation. Nothing in the latter language evidences an intent to prohibit the splitting of lots.

 Having determined that the chancellor erred in his interpretation of the restrictive covenant, we reverse his order enjoining the further splitting of lots and the sale of lots that are already split. Our holding necessitates that we also reverse the chancellor's attorney fee award to appellees because appellees are no longer the prevailing party. *See* Ark. Code Ann. § 16-22-308 (Repl. 1999).[2]

The next issue to be addressed concerns the chancellor's decision not to enforce a fifteen-foot sewer easement over the lot owned by appellees Donnie and Carol Whitson. The easement was sought by appellant in late 1996 for the purpose of connecting sewer lines to some of the split lots. Donnie Whitson (unaware that the sewer lines would service split lots, which he opposed) executed the easement in December 1996 in favor of the city of Greenwood. In conjunction therewith, he executed an agreement with appellant

---

[2] We need not reach the issue of whether attorney fees are recoverable under § 16-22-308 in an action for breach of a restrictive covenant.

that, as compensation for the easement, appellant would clean up two ditches on Whitsons' lot, clean out a creek on the lot, repair any ground disturbed by the laying. of the sewer lines, and hook Whitsons' house up to the sewer line at no charge. Both the easement and the agreement were signed by Donnie Whitson but not by Carol Whitson. In reliance on these instruments, appellant laid the sewer line across the Whitsons' property. According to Forrest Griffith, he was unaware that the easement might not be valid in the absence of Mrs. Whitson's signature.

 Following the trial, the court initially declared that the City of Greenwood was granted an easement by estoppel across the Whitsons' lot. However, upon appellees' motion, he set that ruling aside on the ground that the City of Greenwood was not a party to the action and appellant was not the real party in interest with regard to whether the easement should be granted. Appellant contends that the chancellor's initial ruling should not have been set aside, and we agree. Arkansas law provides that every action is to be prosecuted in the name of the real party in interest. Ark. R. Civ. P. 17(a). A real party in interest is considered to be the person or corporation who can discharge the claim on which the allegation is based, not necessarily the person ultimately entitled to the benefit of any recovery. *Smith v. National Cashflow Systems, Inc.*, 309 Ark. 101, 827 S.W.2d 146 (1992). Here, appellant was actually a party to the easement agreement, although the easement ran in favor of the city. Appellant, as per its contract with Donnie Whitson, provided the compensation for the easement and relied on the easement in installing the sewer lines. The existence of the easement benefitted appellant as much as it did the city. The relationship between appellant and the City of Greenwood for the purpose of this easement was symbiotic enough to allow appellant to discharge the claim that an easement by estoppel should exist. We therefore reverse the chancellor's finding on this point and direct that his original order finding an easement by estoppel be reinstated.

 Finally, we address appellees' argument, made in their brief and in motions filed prior to submission of the case, that they are entitled to costs and attorney fees due to appellant's noncompliance with our abstracting rules. They claim that appellant's abstract is deficient for failing to include the judgments appealed from and excessive for including too much extraneous material. Appellant has, in turn, filed a motion for costs and attorney fees incurred in responding to appellees' motion. We deny both motions. There was

no deficiency in appellant's abstract because he included the judgments appealed from in an addendum as required by Ark. Sup. Ct. R. 4-2(a)(8). Items included in an addendum are not to be abstracted. Ark. Sup. Ct. R. 4-2(a)(6). On the other hand, appellant did engage in excessive abstracting. His abstract consists of two volumes containing 464 pages. Much of this material could have been abridged or deleted entirely because it was not necessary to our understanding of the issues on appeal. Excessive abstracting is as violative of the rules as omissions of material pleadings, exhibits, and testimony. *See Schwarz v. Moody*, 55 Ark. App. 6, 928 S.W.2d 800 (1996). Our rules give us several options in dealing with abstract violations. However, none of them include awarding costs and fees for reviewing an excessive abstract. We may award costs to appellee for supplementing a deficient abstract or we may allow an appellant to file a substituted or revised abstract or we may affirm the case for flagrant deficiencies. *See* Ark. Sup. Ct. R. 4-2(b). However, we decline to exercise any of these options in this particular case.

We reverse and remand for entry of orders consistent with this opinion.

JENNINGS and GRIFFEN, JJ., agree.