WAYMOND M. BROWN, Judge
Appellant appeals from the circuit court's August 30, 2017 order. On appeal, he makes a number of arguments that can be summarized as the circuit court erred in awarding a one-half interest in interpleaded proceeds to Laquita Parker because her lien was (1) subordinate to that of the Internal Revenue Service (IRS) and (2) void as it was against the operating agreement of 45 Development Group, LLC (45 Development). We affirm.
In its amended and restated operating agreement of October 13, 2000, 45 Development named Richard Srygley as a member thereof with a 40 percent ownership interest therein. Though married since July 18, 1981, Laquita Srygley Parker was not a named member and had no ownership interest in 45 Development.
Srygley and Parker were divorced by decree entered on August 30, 2007. Therein, it was stated:
8. That all matters of property, both marital and non-marital, jointly and otherwise have been concluded by the parties to this action by agreement; that this Court has reviewed a copy of the Child and Custody and Property Settlement Agreement filed herein; that such Agreement is fair and equitable and is adopted by this Court. Such agreement is incorporated, but not merged, herein as fully and as effectively as if set forth word for word herein.
The "Child Custody and Property Settlement Agreement" (PSA), as is pertinent to this case, stated:
11. RCS LAND COMPANY, LLC: The parties acknowledge that there is in place a certain limited liability company known and described as the RCS Land *390 Company and that all the interests in RCS Land Company is owned by the two irrevocable trusts established for the use and benefit of the children born of this marriage as such trusts are described in Paragraph 1. With respect to RCS Land Company, LLC, the parties agree as follows:
....
The parties acknowledge that RCS Land Company, LLC has been operated in the past so that it presently generates a significantly positive cash flow. Based on the present cash flow available to RCS Land Company, the parties agree that the Wife will receive the sum of Fourteen Thousand Dollars ($14,000.00) per month beginning September l, 2007. It is anticipated that the cash flow of the company will increase over the coming years and, in the event of such increase, the Wife will receive a corresponding increase of the monthly payment to her.... The parties further agree that the Husband shall be entitled to withdraw an equivalent amount to what the Wife is drawing each month, assuming that the cash is available, but that, under no circumstances, can the Husband draw from RCS Land Company an amount in excess of the amount drawn by the Wife.
....
12. SECURITY FOR PAYMENT TO WIFE: The parties acknowledge that the personally [sic] guaranty of the Husband set out in the preceding paragraph and subparagraphs of this agreement shall be secured by the Wife claiming a security interest in the Husband's interest in the Quarry Shopping Center[1 ] in Fort Smith, Arkansas. Specifically, if RCS Land Company, LLC fails to make payment of monthly payment when due and the Husband defaults on his personal guaranty, then the Wife may pursue the Husband's interest in the Quarry Shopping Center in Fort Smith, Arkansas. In the event that the shopping center is sold, the parties' interest in the proceeds of such sale shall be divided as follows:
a. That the secured debt on the Quarry Shopping Center will be paid.
b. That a certain line of credit in the face amount of $1 million will be paid to the extent that proceeds have been drawn against such line of credit as of August 3, 2007. Any proceeds drawn against such line of credit subsequent to August 3, 2007, shall be paid individually by the Husband.
c. The Wife shall receive one-half (1/2) net proceeds of the sums of money remaining.
d. That the Husband's interest in the sums remaining shall be used to purchase a certificate of deposit in the name of the Husband with such certificate of deposit being pledged against the Husband's obligations set out in the preceding paragraph of this agreement.
....
14. OTHER BUSINESS INTERESTS: The parties acknowledge and agree that, either individually or jointly, they are involved in other businesses standing either in personal names or through limited liability companies, corporations or other such businesses entities. All such other business entities not specifically referred to herein, shall continue to be owned by the parties in the same fashion and in the same percentages as they are owned on this date excepting that the Wife shall own one-half *391 (1/2) of any business interest standing in the Husband's name as of the date hereof. Specifically, the parties acknowledge that the Wife is entitled to one-half (1/2) of the parties share of the partnership known and styled as S & S Partnership for a total of twenty-five percent (25%) of the total partnership but, with respect to any other business entity or property, the parties' intent is to divide the interest owned by the parties equally between them excepting only for businesses and properties specifically referred to herein.
Parker filed multiple petitions for contempt at some point in the case.[2] Following a hearing held on December 18, 2014, the circuit court entered an order on January 28, 2015, in which it found that "all [Srygley's] payments [were] current and that there [was] no contempt as to all motions previously filed [therein]."
However, the circuit court also entered an order on December 27, 2016, finding Srygley in contempt. The order further stated:
2. Richard C. Srygley agrees to sell his interest in 45 Land Development, LLC, for the sum of Two Million Dollars. The sale proceeds shall go first to pay the directly secured debt of First National Bank of Fort Smith with the balance to be interpled for court determination of the rights of all parties. If the sellers are willing to delay the sale until after January 1, 2017, the sale will be concluded as soon as reasonably possible after that date. If for any reason the seller indicates they are not agreeable to postponing the sale until January 1, 2017, Richard Srygley shall complete the sale in 2016. If for any reason Richard C. Srygley fails or refuses to sign the sale agreement, the Clerk of this Court is hereby appointed as his agent for the purpose of signing an agreement to sell his share of 45 Land Development, LLC, for Two Million Dollars.
3. Judgment is entered in favor of the Plaintiff in the sum of Two Million Dollars. This sum includes One Million Five Hundred Thousand Dollars that is subject to dispute. The Plaintiff believes that she is owed the sum of Four Million Nine Hundred Thousand Dollars more or less and the Defendant believes the correct amount to be much less and potentially zero. Either the Plaintiff or Defendant can petition this Court to fix and determine the final amount owed by Defendant to Plaintiff and if the Court's ruling so holds, remit up to One Million Five Hundred Thousand Dollars of the Two Million Dollar Judgment granted herein or award such greater amount as is established by Plaintiff. In all other respects this Judgment shall be deemed as final and conclusive of the rights of the Plaintiff.
At some date after this order, which is not made known by Srygley's brief, the remaining members of 45 Development bought out Srygley's interest in 45 Development. 45 Development filed an interpleader petition on January 18, 2017, against Srygley, Parker, the Internal Revenue Service (IRS), and the state of Arkansas' Department of Finance and Administration (DFA). Noting that Srygley's 40 percent membership interest was $2,000,000, the petition stated that 45 Development possessed $1,404,152.10 in proceeds,[3] the ownership interest of which *392 needed to be decided as between the named defendants; it disclaimed any interest in the proceeds. The circuit court entered an order interpleading the funds with the court clerk and releasing 45 Development from the matter on the same date.
Parker responded to the interpleader motion on February 7, 2017, asserting "an outright ownership of 1/2 interest" in the interpleaded funds in addition to the remaining one-half due to her $2,000,000 judgment against Srygley. She requested an order directing that all proceeds of the interpleader action be turned over to her. The DFA responded on March 6, 2017, stating that it had "no interest in this matter" and requesting to be dismissed without prejudice.[4] Srygley responded on March 8, 2017, admitting the allegations of "paragraphs one through ten as such pertains to the sale of the Defendant's interest in 45 Development Group, LLC, payment of the joint debt of Defendant, Richard Srygley and Laquita Srygley, [to] First National Bank with the balance being held with this Court." He requested that the petition be dismissed. The IRS responded on March 22, 2017, requesting "recognition of its liens" and that the funds be ordered to be distributed to it.
On June 6, 2017, Parker filed a motion for summary judgment, and brief in support, asserting that Srygley "did personally guarantee his obligations" to Parker as contained in the PSA; he secured his obligations to her with a security interest in 45 Development doing business as the Quarry Shopping Center; and agreed that Parker was permitted to pursue his interest in 45 Development if he defaulted on his personal guarantee, after Srygley's debt to First National Bank was paid. Noting the circuit court's December 27, 2016 order on granting her a judgment of $2,000,000-which led to the filing of this action-and the fact that Srygley had defaulted on his obligation, Parker stated that there was "no necessity to hold such funds in so much as the default of Richard C. Srygley exceeds the amount." Accordingly, Parker sought summary judgment regarding entitlement to all the proceeds as against any claim of Srygley.
Srygley responded to Parker's motion on June 27, 2017, asserting that a question of material fact remained making summary judgment inappropriate. He stated that while Parker was "correct in her recitation of the Property Settlement Agreement and Mr. Srygley's resulting responsibilities[,]" she failed to take into account the contingent nature of the order which required one or either of the parties to petition the circuit court "to fix and determine the final amount."[5] Accordingly, he argued that there was no way to say that Parker was or was not entitled to a specific amount; therefore, a question of material fact remained.
Srygley filed an amended response to Parker's summary-judgment motion on July 24, 2017, asserting that 45 Development's operating agreement disallows any member the right to sell, assign, transfer, encumber, etc., in any way all or part of their interest without approval by vote of the majority of the members; and that *393 voluntary transfers were only allowed upon prior written unanimous consent of all other members of the company.[6] Because "the funds Ms. Parker is referencing come directly from 45 Development" and the other members never gave consent to an assignment to Parker, Srygley argued that "any purported assignment" would be "void and unenforceable and would not constitute a lien on Mr. Srygley's interest." He went on to state that he was not contesting his debt to Parker, pursuant to the December 27, 2016 order-subject to a possible reduction and remittitur-but argued that Parker's claim was inferior to that of the IRS; and so the IRS should receive the full balance of its lien before any payment to Parker.
Following multiple notices for differing amounts for differing tax periods, on August 1, 2017, the Internal Revenue Service (IRS) sent a notice to Srygley advising him that his outstanding tax debt for three tax periods ending in 2011, 2012, and 2013, respectively, was $1,272,287.09. The IRS confirmed to Parker's counsel on August 2, 2017, that
in order to settle and compromise the priority issues in the above case, the IRS has agreed that Ms. Laquita Srygley Parker is entitled to one half of the funds that were paid into the Court Registry by 45 Development Group, LLC. In addition, IRS has agreed that Ms. Parker would be entitled to 32.5% of the remaining funds that are currently in the registry of the Court. Further, Ms. Parker has agreed that the IRS is entitled to 67.5% of the remaining funds. As a result, if the Court rules in Ms. Parker's favor, she would receive $930,294.61 and the IRS would receive $473,923.64 based upon the balance in the registry of the Clerk on July 31, 2017.
A hearing was held on August 3, 2017, after which the circuit court entered its order in the matter on August 30, 2017.[7] Noting that "[t]he facts are not complicated and most, if not all, are uncontested[,]" it went on to find as follows:
Mr. Srygley sold his forty percent (40%) interest in Plaintiff for $2,000,000.00. There was an obligation owed to First National Bank of Fort Smith in the sum of $583,562.90 that was paid. On January 19, 2017, $1,404,152.10 was deposited into the Registry of the Court and since said date there have been transfers and deposits and that as of August 25, 2017, there is $1,404,218.25 in the Registry.
Ms. Parker wants what the Child Custody and Property Settlement Agreement provided her. That is, one-half (1/2) interest the proceeds of the Srygley sale with the remaining one-half (1/2) being held in trust.
Mr. Srygley wants the transfer to be held null and void because 8.1 of the LLC agreement prohibited voluntary transfers. However, it did not provide any remedy if 8.1 was violated. Further, Arkansas Code Annotated (A.C.A.) § 4-32-704 provides that unless provided otherwise the transfer may occur however the assignee may not become a member of the LLC. Further, Mr. Srygley argues that the IRS lien would have priority over Ms. Parker. However, as pointed out by Ms. Parker's attorney the IRS did not argue this point but rather *394 simply requests that its lien be recognized.
The Court has little difficulty in deciding this case. The Court finds that the agreement entered into between the parties at the time of their divorce is valid and binding. Ms. Parker is awarded one-half (1/2) of the funds that are in the Registry of the Court. She is further awarded 32.5% of the remaining funds in the Registry of the Court. The balance of 67.5% of the funds remaining shall be paid to the IRS to be applied to Mr. Srygley's IRS debt.
The clerk of the court was also directed to issue the appropriate checks therein. The clerk issued checks to Parker and the IRS for $930,294.61 and $473.923.64, respectively, on August 31, 2017.[8] This timely appeal followed.
Before we can reach the merits of this matter, we must first address Parker's assertion that Srygley is not the real party in interest. We agree.
Arkansas Rule of Civil Procedure 17(a) states, "Every action shall be prosecuted in the name of the real party in interest." A real party in interest is considered to be the person who can discharge the claim on which the allegation is based, not necessarily the person ultimately entitled to the benefit of any recovery.[9] Srygley readily admitted below and before this court that he has no claim to the interpleaded proceeds. He admits that while he argues that all the proceeds should go to the IRS, the proceeds necessarily will go to either the IRS or Parker. He admits that no matter which entity receives the proceeds, he will still owe money to the other. Accordingly, the real parties in interest are the IRS and Parker.
Both the IRS and Parker were parties to the matter below and-as noted by Parker to this court-the IRS did not make any argument regarding the priority of its lien over Parker's claim. Furthermore, it chose to enter into a settlement with Parker regarding disbursement of the proceeds if she was successful in the matter, thereby mooting any potential priority argument. Srygley cannot make arguments for the IRS. Likewise, he cannot make arguments for 45 Development regarding the voidability of Parker's claim by its operating agreement. Only 45 Development, or members thereof, can make that argument. 45 Development was released from this matter in the circuit court's January 18, 2017 order-having made no argument regarding the voidability of Parker's claim-and Srygley is no longer a member of 45 Development as he sold his interest, the proceeds of which are now at issue. Accordingly, Srygley cannot speak for 45 Development.
Because Srygley has no ability to discharge any lien and makes arguments before this court that can be made only by other entities-entities that were parties to this matter yet chose not to make said arguments-he is not the real party in interest.
Affirmed.
Glover and Vaught, JJ., agree.

45 Development does business as the Quarry Shopping Center.

Parker's contempt motions are not in the record or brief; however, being irrelevant to the points on appeal, we do not order supplementation.

A claim for $593,562.90 from First National Bank of Fort Smith had been paid from the $2,000,000 proceeds. It is not clear whether this is that balance owed on the credit line referenced in paragraph 12b of the PSA.

No formal motion to be dismissed was ever filed.

The court notes that the sentence referenced by Srygley states, in full, "Either the Plaintiff or Defendant can petition this Court to fix and determine the final amount owed by Defendant to Plaintiff and if the Court's ruling so holds, remit One Million Five Hundred Thousand Dollars of the Two Million Dollar Judgment granted herein or award such greater amount as is established."

He also stated therein that "45 Development is a limited liability company that is in good standing and is registered to do business in Arkansas."

It appears that the circuit court addressed the merits without formally ruling on Parker's motion for summary judgment. However, ruling on the merits would necessarily require that it denied Parker's motion for summary judgment.

A supplemental order was entered on September 13, 2017, to dispose of $111.57 that remained as interest accrues on the initial amount.

Coleman v. Coleman , 2016 Ark. App. 324, at 11-12, 497 S.W.3d 688, 695 (citing Forrest Constr., Inc. v. Milam , 345 Ark. 1, 43 S.W.3d 140 (2001) ).